IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |  |
|---|---|---|
| MATTHEW T. ALLEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:14-cv-00508 |
| | ) | |
| D.A. FOSTER COMPANY, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendant D.A. Foster Company's ("D.A. Foster") motion for summary judgment.[1] D.A. Foster is a heavy construction company, operating in Virginia. Barnes Excavating is a sole proprietorship owned by Mark Barnes, performing excavating services and working largely as a subcontractor to D.A. Foster. On June 17, 2013, Plaintiff Matthew Allen ("Allen" or "Plaintiff") was hired by Barnes Excavating and began work as a laborer on a D.A. Foster project.

On August 23, 2013, while at the worksite, an unidentified man from another company began making sexual advances towards

---

[1] Defendant Matthew Allen has currently not moved for summary judgment and the holding of this opinion pertains only to D.A. Foster.

Allen. Among other things, the man asked Allen to draw him nude. Later that day, the man drew Allen nude. Allen reported the incident to Mark Barnes, who allegedly took no action. Allen then reported the incident to D.A. Foster's on-site foreman, who ejected the man from the premises. However, Allen's coworkers heard about the incident and began harassing him by, among other things, insinuating that he is a homosexual, exposing themselves to him, singing a song about him being raped, and trying to urinate on him. Despite his complaints about this behavior, Allen's supervisors allegedly took no action, Mark Barnes allegedly engaged in the harassment, and Allen's coworkers continued to harass Allen. On September 22, 2013, Allen's employment was terminated by Barnes Excavating ostensibly due to a lack of work.

Based on these facts, Allen brought a five-count complaint against D.A. Foster and Barnes Excavating. Count I alleges discrimination and hostile work environment in violation of Title VII, 42 U.S.C. § 2003-2(a)(1). Count II alleges retaliation and retaliatory termination in violation of Title VII, 42 U.S.C. § 2000e-3(a). Count III alleges common law wrongful termination of employment for opposing or resisting criminal conduct, Bowman v. State Bank of Keysville, 331 S.E.2d

797, 801 (Va. 1985).[2] And Count IV alleges common law intentional infliction of emotional distress, Womack v. Eldridge, 210 S.E.2d 145, 148 (Va. 1974).[3]

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the pleadings and evidence before the Court show no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). While the court will view the facts and inferences drawn in the light most favorable to the nonmoving party, the party opposing the motion for summary judgment must put forth specific facts showing a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

As to Counts I and II, discrimination and hostile work environment and retaliation and retaliatory termination in violation of Title VII, Allen's claims against D.A. Foster are misguided. It is axiomatic that a claim under Title VII may only be brought by an employee and not by an independent contractor. Cilecek v. Inova Health System Services, 115 F.3d

---

[2] Allen alleges that he was terminated for refusing to be a victim of Va. Code § 18.2-387 (indecent exposure) and Va. Code § 18.2-345 (open and gross lewdness).
[3] Count V of Allen's complaint, alleging violations of the Virginia Human Rights Act, VA. Code § 2.2-3900, et seq., is against Barnes Excavating only and will not be discussed in this opinion.

256, 259 (4th Cir. 1997). While Title VII defines "employee" and "employer" circularly, Cilecek, 115 F.3d at 759; see also 42 U.S.C. § 2000e(f) and § 2000e(b), the Supreme Court has turned to "the conventional master-servant relationship as understood by common-law agency doctrine" to determine whether one is an employee or independent contractor. Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322-23 (1992). Ultimately, the test is whether it is "the hiring party's right to control the manner and means by which the product is accomplished." Community for Creative Non-Violence v. Reid, 490 U.S. 730, 751 (1989); see also Nationwide, 503 U.S. at 323. In making this determination, the Court is to consider several factors:

> [T]he skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party. No one of these factors is determinative.

Farlow v. Wachovia Bank of North Carolina, N.A., 259 F.3d 309, 313 (4th Cir. 2001) (quoting Reid, 490 U.S. at 751-52). Additionally, Cilecek added that the parties' beliefs regarding the nature of the employment relationship are significant. Cilecek, 115 F.3d at 259-63; Farlow, 259 F.3d at 313.

Here, D.A Foster did not control Allen to the extent necessary to find him to be an employee of D.A. Foster.  The source of the instrumentalities and tools was Barnes Excavating, as D.A. Foster expected its subcontractors to provide their own equipment, which Barnes Excavating did and charged D.A. Foster accordingly for the use of that equipment.  Although Barnes Excavating did use some of D.A. Foster's large specialty equipment, Allen was not authorized to operate it. Although the performance of Allen's work was generally at D.A. Foster worksites, he arrived at the sites by commuting with Barnes Excavating workers and worked under the supervision of a Barnes Excavating foreman.  The duration of the relationship between Allen and D.A. Foster was very short, as he was only employed by Barnes Excavating for approximately three months.  D.A. Foster likely did not have the right to assign additional projects to Allen because, outside of assigning projects to Barnes Excavating, D.A. Foster did not dictate who performed the work or provide onsite direction directly to subcontractors' workers.  Generally, D.A. Foster does not direct when work is to be performed, it simply requires it subcontractors to abide by the customer's specification of daytime or nighttime performance.  Otherwise, D.A. Foster does not control which individual employees work and at what time they work.  Allen was paid exclusively by Barnes Excavating as well as hired by Barnes

Excavating, not by D.A. Foster.  The project Allen was a part of was part of D.A. Foster's regular business in the heavy construction industry.  D.A. Foster did not provide Allen with any employee benefits nor issue him a W-2 form; only Barnes Excavating made such provisions.  Finally, Allen could not reasonably believe himself to be an employee of D.A. Foster, having received no employment documentation.  The D.A. Foster identification badge that he wore clearly indicated that he was a subcontractor of Barnes Excavating.  Although it is the regular practice of D.A. Foster to utilize subcontractors and Allen received some, albeit minimal, training and oversight, which weighs in favor of finding Allen to be an employee, the balance of factors do not.  Because Allen was not an employee of D.A. Foster, but rather an independent contractor, he cannot bring a claim under Title VII against D.A. Foster.  Accordingly, D.A. Foster is entitled to summary judgment on Counts I and II.

As to Count III, common law wrongful termination of employment for opposing or resisting criminal conduct, Allen's claim against D.A. Foster is similarly misguided.  Virginia "strongly adheres to the employment-at-will doctrine." Lockhart v. Commonwealth Educ. Sys. Corp., 439 S.E.2d 328, 330 (Va. 1994).  However, as an exception to this rule, Virginia recognizes a common law cause of action for wrongful termination in violation of an established public policy.  Bowman v. State

Bank of Keysville, 331 S.E.2d 797, 801 (Va. 1985). One form of established public policy is the criminal code, and a claim will arise from an employee's termination for refusing to violate the criminal code. Mitchem v. Counts, 523 S.E.2d 246, 252 (Va. 2000). "Certainly, the General Assembly did not intend that the employment-at-will doctrine . . . serve as a shield for employers who seek to force their employees, under the threat of discharge, to engage in criminal activity." Id. However, because D.A. Foster is not Allen's employer, as discussed above, and because D.A. Foster had no role in Barnes Excavating's termination of Allen, D.A. Foster cannot be found liable for a claim of wrongful discharge in violation of an established public policy. Accordingly, D.A. Foster is entitled to summary judgment on Count III.

Finally, as to Count IV, intentional infliction of emotional distress, Allen again misdirects his attention to D.A. Foster. To state a claim of intentional infliction of emotion distress, Plaintiff must show that "(1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable; (3) there was a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress was severe." Harris v. Kreutzer, 624 S.E.2d 24, 33 (Va. 2006) (citing Womack v. Eldridge, 210 S.E.2d 145, 148 (Va. 1974)). D.A. Foster engaged in no wrongdoing or

intentional conduct. None of the inappropriate behavior complained of was by D.A. Foster supervisors or employees but by Allen's coworkers at Barnes Excavating. Further, Allen contradictorily complains that D.A. Foster did nothing to stop the harassment but also states that D.A. Foster's on-site foreman ejected the initial harasser from the worksite. Accordingly, D.A. Foster is entitled to summary judgment on Count IV.

In order for a federal court to have subject matter jurisdiction over a case, there must be either a federal question or diversity of citizenship. Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). Once federal subject matter jurisdiction exists over a non-diverse claim, additional state law claims may be heard by a federal court, in its discretion, under supplemental jurisdiction. United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725-26 (1966). In this case, there can be no diversity jurisdiction because there is no diversity of citizenship among the parties.[4] Subject matter jurisdiction in this case arises solely from the presentment of a federal question, namely the claims of discrimination and retaliation in violation of Title VII. The claims of wrongful termination and

---

[4] Allen is a resident of Virginia, D.A. Foster is a Virginia corporation, and Barnes Excavating is a sole proprietorship owned by Mark Barnes with its principal place of business in Virginia; all parties are Virginia citizens for jurisdictional purposes.

intentional infliction of emotional distress are state law claims and may only be heard in federal court under supplemental jurisdiction. Having ruled against Plaintiff on the only federal claims, the Court finds that the best course of action is for Allen to pursue his remaining state claims against Barnes Excavating in the appropriate state court. See Gibbs, 382 U.S. at 726 (stating that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well").

For the aforementioned reasons, this Court finds that summary judgment should be granted in favor of Defendant D.A. Foster and the remaining state claims against Defendant Barnes Excavating should be dismissed to be brought in the appropriate state court. An appropriate order shall issue.

/s/ Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
April 10, 2015